FILED

SEP - 5 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

**COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983**

Name Xavier, Gary, R.
(Last) (First) (Initial)

Prisoner Number J-20637

Institutional Address CSP-LAC, 44750 60th St. West, Lancaster, CA 93539

(PR)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

KAW

GARY RAYMOND XAVIER,
(Enter the full name of plaintiff in this action.)

vs.

C. TANORI, CORRECTIONAL OFFICER;
E.W. BEAM, CORRECTIONAL SERGEANT)
J. RAMIREZ, CORRECTIONAL OFFICER;
R. FERRARI, REGISTERED NURSE.
(Enter the full name of the defendant(s) in this action)

CV 19 5587

Case No. ______
(To be provided by the Clerk of Court)

**COMPLAINT UNDER THE CIVIL RIGHTS ACT, Title 42 U.S.C § 1983**

***[All questions on this complaint form must be answered in order for your action to proceed..]***

I. Exhaustion of Administrative Remedies.

[**Note:** You must exhaust your administrative remedies before your claim can go forward. The court will dismiss any unexhausted claims.]

A. Place of present confinement CAL. STATE PRISON - L.A. COUNTY

B. Is there a grievance procedure in this institution?

YES (x) NO ( )

C. Did you present the facts in your complaint for review through the grievance procedure?

YES (x) NO ( )

D. If your answer is YES, list the appeal number and the date and result of the appeal at each level of review. If you did not pursue a certain level of appeal, explain why.

1. Informal appeal NOTE: Plaintiff exhausted Staff Complaint Appeal against all 4-Defendants: Log #SVSP-L-17-05685 (TANORI) Log # SVSP-L-18-01575 (J. RAMIREZ); Log #SVSP-L-18-01315 (BEAM)

2. First formal level See above (NOTE)

3. Second formal level See above (NOTE)

4. Third formal level See above (NOTE)

E. Is the last level to which you appealed the highest level of appeal available to you?

YES (x) NO ( )

F. If you did not present your claim for review through the grievance procedure, explain why. N/A

II. Parties.

A. Write your name and your present address. Do the same for additional plaintiffs, if any.

Plaintiff: Gary R. Xavier, CSP-LAC, 44750 60th St West, Lancaster CA 93539. Defendants, C. Tanori; J. Ramirez; E.W. Beam; R. Ferrari, all are employed at Salinas Valley State Prison, 31625 Hwy. 101, Soledad, CA

B. Write the full name of each defendant, his or her official position, and his or her place of employment.

#1.) C. Tanori, Correctional Officer at S.V.S.P.

#2.) E.W. Beam, Correctional Sergeant at S.V.S.P.

#3.) J. Ramirez, Correctional Officer at S.V.S.P.

#4.) R. Ferrari, Registered Nurse at S.V.S.P.

III. Statement of Claim.

State here as briefly as possible the facts of your case. Be sure to describe how each defendant is involved and to include dates, when possible. Do not give any legal arguments or cite any cases or statutes. If you have more than one claim, each claim should be set forth in a separate numbered paragraph.

See Attached Complaint.

IV. Relief.

Your complaint cannot go forward unless you request specific relief. State briefly exactly what you want the court to do for you. Make no legal arguments; cite no cases or statutes.

See Attached Complaint pages 27 and 28.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this FIFTEENTH day of AUGUST, 2019

(Plaintiff's signature)
Gary R. Xavier

Gary R. Xavier, No. J-20637
Calif. State Prison - Los Angeles Co.
44750 60th Street West
Lancaster, CA 93539

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GARY R. XAVIER,<br><br>Plaintiff,<br><br>vs.<br><br>C. TANORI, CORRECTIONAL OFFICER;<br>E.W. BEAM, CORRECTIONAL SERGEANT;<br>J. RAMIREZ, CORRECTIONAL OFFICER;<br>R. FERRARI, REGISTERED NURSE,<br><br>Defendants. | Case No.<br><br>COMPLAINT PURSUANT TO 42 U.S.C. §1983, FOR DAMAGES AND JURY TRIAL |

-PRELIMINARY STATEMENT-

1.) This is a civil rights action brought under the U.S. Constitution. Plaintiff Gary R. Xavier files this 42 U.S.C. §1983 Civil Rights Complaint based on Defendants C. Tanori; E.W. Beam; J. Ramirez; and R. Ferrari's violations of Plaintiff's civil rights guaranteed by the United States Constitution. Plaintiff further requests the Court to exercise its supplemental jurisdiction under 28 U.S.C. §1367 et seq.,

to hear Plaintiff's state law claims regarding the above-named Defendants. Plaintiff has fully exhausted all available administrative remedies, including both California Department of Corrections and Rehabilitation (CDCR) inmate appeals system, and State Board of Claims process regarding Plaintiff's State Law claims. The granting of Plaintiff's complaint will have no effect on Plaintiff's release date.

Plaintiff brings Federal causes of action for unnecessary force, failure to protect, supervisor liability, denial and delay of medical care in violation of the 8th Amendment to the United States (U.S.) Constitution.

Plaintiff brings State Tort law claims for battery, negligence, and medical negligence.

-JURISDICTION + VENUE-

2.) Jurisdiction in this Court is based on "Federal Question", jurisdiction, and suit is expressly brought under Federal Statutes 28 U.S.C. §1331 and §1343. This court has jurisdiction of Plaintiff's State Law claims under 28 U.S.C. §1367 et seq. Federal Courts have discretion to exercise supplemental jurisdiction of state law claims - 28 U.S.C. §1367(c)(3). Furthermore, dismissal of Plaintiff's Federal claims does not automatically deprive the court of subject matter jurisdiction over state law claims (See: Carlsbad Tech Inc. v. Hif. Bio Inc.. 556 U.S. 635, 639, 129 S.Ct. 1862, 173 L.Ed.2d 843 (2009)). Venue is proper in the Northern District of California (CA.) because the events giving rise to this claim occurred at Salinas Valley State Prison (SVSP) at

Soledad, Calif., which is located in this district.

-EXHAUSTION OF ADMINISTRATIVE REMEDIES-

3.) Plaintiff has complied with 42 U.S.C. §1997(e), the Prisoner Litigation Reform Act (PLRA), and has exhausted all administrative remedies available. This includes both CDCR Administrative Remedies and State Board Claims process for Plaintiff's state law claims. The granting of this complaint will by no means change Plaintiff's current release date.

-THE PARTIES-

4.) Plaintiff Gary R. Xavier is a California (CA.) resident currently incarcerated at California State Prison - Los Angeles County, a branch of the Calif. State Prison system administered by the C.D.C.R. Plaintiff was the victim of unnecessary force, and suffered severe pain and emotional suffering while in the care of C.D.C.R. In addition, the Defendants denied Plaintiff access to all medical care. For all times relevant, Plaintiff's claims arose in S.V.S.P.

5.) Defendant, E.W. Beam, is a Correctional Sergeant (Sgt.) at S.V.S.P. responsible for supervising receiving and release (R & R) the evening of the incident who is at all times relevant in this action. Defendant E.W. Beam is being sued in his individual and official capacities.

6.) Defendant C. Tanori, is a Correctional Officer at S.V.S.P. responsible for the unnecessary force who is at all times relevant in this action. Defendant C. Tanori is being sued in his individual and official capacities.

7.) Defendant J. Ramirez, is a Correctional Officer at S.V.S.P. responsible to protect Plaintiff who is at all times relevant in this action. Defendant J. Ramirez is being sued in his individual capacities, and official capacity.

8.) Defendant R. Ferrari, is a Registered Nurse at S.V.S.P. responsible for Plaintiff's medical care who is at all times relevant in this action. Defendant R. Ferrari is being sued in her individual and official capacities.

-FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION-

9.) On 8-30-17, Plaintiff attended classification committee at CA. State Prison, Sacramento (C.S.P./Sac.).

10.) Plaintiff explained to Warden that he had resolved his case in Sacramento Federal court and appealed to him for a special transport back to his endorsed prison (S.V.S.P.) to attend a long-planned contact visit with his mother.

11.) Plaintiff also explained to Warden that his mother was 72-years old and flying across county from Massachusetts for the sole purpose of visiting her youngest son had not seen in approximately 10-years.

12.) The Warden of C.S.P./Sac. granted Plaintiff's request and later that same day (i.e., 8-30-17) Plaintiff was transported back to S.V.S.P.

13.) Upon arrival at S.V.S.P., Plaintiff along with 2-other prisoners (i.e., Ortiz + Lopez) were locked in "Individual/ Isolated one-man holding cells" for property issuance and return to designated yards.

14.) Plaintiff and prisoner Ortiz requested Defendant C. Tanori issue their property which he refused to do causing a verbal argument between all 3-parties.

15.) Visibly upset regarding prisoners request for property and the ensuing discussion Defendant C. Tanori began threatening Plaintiff by unholstering, waving and shaking his O.C. spray canister (in violation of C.C.R. Title 15, §3391(a), employee conduct) stating, "you better shut the fuck up."

16.) Plaintiff stated, "What are gonna do, spray me through the bars for no reason?" Defendant C. Tanori had returned to his work area behind a counter-top (approx. 3-feet across) with a divider which runs from floor to counter-top (approx. 4½ feet tall) and began processing personal property. There is a walk-way between the barred holding cells and the counter-divider approx. 4½ feet wide.

17.) During this time Defendant W.E. Beam came out of his office (which is approx. 10 to 15 feet away from the holding cells) where his door was completely open, and stated, "you guys shut the fuck up, you're gonna get your property". Defendant Sgt E.W. Beam was in direct proximity to where Plaintiff and Defendant C. Tanori were located and clearly overheard the conversation.

18.) Defendant E.W. Beam returned to his office leaving the door open and within minutes, Defendant C. Tanori returned to Plaintiff's locked and isolated one-man holding cell with paper in his hand stating, "Here, sign this for your property."

19.) Plaintiff responded, "I can't sign that until I'm sure all my property is here." Before Plaintiff realized what was about to occur, Defendant C. Tanori had pulled out his O.C. spray and sprayed Plaintiff (through the bars) directly in the face, neck & chest.

20.) At no time prior to or during this initial battery by O.C. spray did Plaintiff use or attempt to use physical force, cause bodily harm, threaten violence, attempt to escape, attempt to or damage valuable property in any manner in regard to staff or himself which would have justified the use of physical force or chemical weapons.

21.) At all times Plaintiff fully cooperated with any and all orders and instructions of staff and did not pose a threat to them or himself while locked within the holding cell. Prisoners maintain a right to refuse to sign a property inventory sheet (C.D.C. Form 1083) when denied the ability to check for discrepancies (See: Departmental Operations Manual (D.O.M.), Article 43, Inmate Property, Section 54030.6: If the inmate refuses to sign, staff shall write down the reason, legibly print then sign their name on the C.D.C. 1083 indicting the supervisor is aware of the inmate's refusal).

22.) At no time did there exist a possibility that Plaintiff could physically harm any staff, himself, attempt to escape or cause damage to property as he was securely locked within an empty one-man isolated holding cell. Therefore, no penological justification existed for the use of any physical force whatsoever against Plaintiff in R & R on 8-30-17.

23.) The initial blast of O.C. spray took away Plaintiff's ability to breathe immediately, causing him to turn away from the cell front and face the back wall of the cell where he began choking, gasping for air and suffering from immense burning sensations in lungs and on skin from the chemical agent.

24.) Plaintiff was temporarily blinded, however, felt along for the sink where he attempted to clear his eyes enough to see. While attempting to regain normal breathing, sight and fearing another attack, Plaintiff heard Defendant C. Tanori clearly state, "That's for talking about my mother, now keep your mouth shut."

25.) Plaintiff was in excruciating pain, in fear, his skin and lungs felt as if they were on fire but could not yell as breathing continued to be extremely compromised.

26.) Plaintiff was shocked and dazed by the fact that a Correctional Officer utilized a weapon against him lacking justification in front of witnesses. Following 10 to 15 minutes of attempting to catch his breath and regain sight, Plaintiff returned to the cell-front asking Defendant C. Tanori (who had returned to his work area behind the counter), "Why did you spray me?" Plaintiff also yelled out for Defendant Sgt. E.W. Beam's intervention.

27.) Upon opening his eyes enough to see, while still coughing, gasping for air and covered with orange O.C. spray, Plaintiff observed Defendants' C. Tanori and J. Ramirez behind the counter laughing at him. Plaintiff called out to Defendant

E.W. Beam for assistance who yelled back (from his office),
"You better shut the fuck up before I go out there and spray
you myself."

28.) The initial blast from O.C. spray was clearly audible,
and the distinct odor filled the area of R & R where
Defendants J. Ramirez & E.W. Beam were located. Plaintiff
began choking & gaging loudly as soon as breathing allowed &
as soon as able called the Sgt. for help. Neither Defendant
intervened in any manner to assist Plaintiff. This failure to
intervene and assist emboldened Defendant C. Tanori to Batter
Plaintiff a second time.

29.) Without verbal warning or comment, Defendant C. Tanori
(Who had returned to the area behind the divider/counter)
rapidly pushed thru through the hinged/swinging door (built
into the divider/counter) and sprayed Plaintiff a second time
in the face and neck with O.C. spray.

30.) Plaintiff again turned around and faced the back of
the cell attempting to cover, however, during this second
battery Defendant C. Tanori continued coating Plaintiff's bare
back and neck until his O.C. spray canister was emptied (Note:
Plaintiff had removed his shirt following the initial battery
as it was covered with O.C. spray).

31.) At no time prior to or during this second battery by
O.C. spray did Plaintiff use or attempt to use physical force,
cause bodily harm, threaten any      violence, attempt to
escape, attempt to or damage valuable property in any manner
regarding staff or himself which would have justified the use

of physical force or chemical weapons.

32.) Defendant J. Ramirez personally eye witnessed both previously mentioned battery's (with O.C. spray) against Plaintiff by Defendant C. Tanori and refused to intervene verbally, physically or by activation of his personal alarm. In fact, Defendant J. Ramirez instigated the second battery by laughing along with Defendant C. Tanori following the initial battery. Approx. 10 to 15 minutes elapsed between the two batteries.

33.) Following the initial battery by Defendant C. Tanori, Defendant E.W. Beam instigated the second battery by threatening to personally spray Plaintiff with more O.C. spray if he did not "shut the fuck up."

34.) According to C.C.R., Title 15, 3268.1(c), "Any employee who observes a use of force that is unnecessary or excessive shall attempt to stop the violation."

35.) Following the initial battery with O.C. spray Plaintiff called for assistance from the supervisor, Defendant E.W. Beam who yelled back from his office, "You better shut the fuck up before I go out there and spray you myself."

36.) Defendants J. Ramirez and E.W. Beam's failure to intervene in Plaintiff's behalf following the initial battery amounts to a failure to protect Plaintiff from further harm (i.e., the 2nd battery).

37.) Furthermore, following the initial battery by Defendant C. Tanori against Plaintiff, Defendants E.W. Beam failed to immediately notify his supervisor. According to C.C.R., Title 15, §3268.1(c), any employee who becomes aware of an

allegation of unnecessary use of force whether it occurs during a reportable incident or not, shall verbally report the allegation to a custody supervisor as soon as possible.

38.) On 9-23-17, Plaintiff filed an Employee Misconduct/ Staff Complaint appeal against Defendant C. Tanori regarding this incident which was exhausted at 3rd Level review on 6-27-18 (See: Log # SVSP-L-17-05685).

39.) On 3-8-18, Plaintiff filed an Employee Misconduct/ Staff appeal against Defendant J. Ramirez regarding this incident which was exhausted at 3rd Level review on 11-27-18 (See: Log # SVSP-L-18-01575).

40.) According to C.C.R., Title 15, Section, 3268(a),(6), "Controlled use of force" is defined: The force used in an institutional setting, when an inmates presence or conduct poses a threat to safety or security "and the inmate is located in an area that can be controlled or isolated." (Emphasis mine).

41.) According to C.C.R., Title 15, Section, 3268.1(d),(1), "A video recording is required for all controlled uses of force occurrences" (Emphasis mine). No video recording was used prior to or during either use of force incidents regarding Plaintiff.

42.) Furthermore, C.C.R., Title 15, Section, 3268(i), stipulates that a controlled use of force requires authorization and the presence of a 1st or 2nd Level Manager (i.e., Facility Captain or Facility Associate Warden). This policy requirement was also disregarded in these use of force incidents regarding Plaintiff, there was no presence of a

Facility Captain or Associate Warden.

43.) According to C.C.R., Title 15, Section, 3268(b), it is the policy of the C.D.C.R. to accomplish the Departmental functions with minimal reliance on the use of force. Employees may use reasonable force as required in the performance of their duties, but unnecessary or excessive force shall not be used. It is obvious in Plaintiff's case Defendant C. Tanori violated C.C.R., Title 15, Section, 3268(b).

44.) Besides the Employee Misconduct/Staff Complaint Plaintiff filed and exhausted against Defendant C. Tanori (paragpaph #38, supra), Plaintiff (on 9-13-17) also filed a complaint with "The Office of the Inspector General" (O.I.G.) regarding the battery's perpetrated by Defendant C. Tanori. Within said complaint Plaintiff requested a full formal investigation and expressed a willingness to submit to a polygraph exam. regarding the incident according to C.C.R., Title 15, Section, 3293(9).

45.) On 1-31-18, Plaintiff was interviewed by Internal Affairs with in person oversight by the O.I.G. regarding the complaint filed (supra, paragraph # 44) with the O.I.G. on 9-13-17. Since then, Plaintiff has been notified that if any disciplinary action were to be imposed on any officers investigated (i.e., Defendants C. Tanori; E.W. Beam; and J. Ramirez) he would not be notified of the fact as all C.D.C.R. staff personnel matters are confidential.

46.) After Plaintiff recovered vision from Defendant C. Tanori's second battery (with O.C. spray) he observed the supervisor Defendant E.W. Beam had again come out of his office

Plaintiff immediately requested assistance from Sergeant E.W. Beam, and asked why he had not assisted him earlier when Plaintiff was yelling for help? (i.e., following the initial battery).

47.) Defendant E.W. Beam began laughing and stated, "I told you earlier to shut the fuck up and you'd get your property." Plaintiff realized Defendant E.W. Beam had no intention of intervening in his behalf to keep him safe from further injury. Plaintiff became extremely fearful that Defendants planned to continue spraying (i.e., torturing) him with O.C. through the cell bars or potentially beat him physically after incapacating him with O.C. spray.

48.) Defendant E.W. Beam was the highest ranking supervisor on location at R & R, so Plaintiff humbly/quietly requested to speak to a lieutenant.

49.) Defendant E.W. Beam again stated laughing and loudly stated, "Now the bitch wants to be respectful."

50.) Throughout the incident, rather than order his subordinate Defendant C. Tanori to discontinue his attack on Plaintiff, or activate his alarm to deter further violence, Defendant E.W. Beam chose to escalate the situation with threats, laughter and verbal disrespect.

51.) On 2-26-18, Plaintiff filed an Employee Misconduct/ Staff Complaint against Defendant E.W. Beam regarding the incident which was exhausted at 3rd Level Review on (PENDING) (See Log # SVSP-L-18-01315).

52.) Eventually Defendant Registered Nurse (R.N.) R. Ferrari approached the holding cell occupied by Plaintiff. The walls, floor and Plaintiff were covered in areas by fresh O.C. spray.

53.) Defendant Ferrari arrived to observe Plaintiff coughing wheezing, with fluids running from his nose and eyes, clearly suffering with respiratory difficulties and in serious pain.

54.) Plaintiff was relieved to see a member of the medical department, believing he would receive medical care and decontamination. Defendant R. Ferrari had a Medical Injury Report (hereafter: CDCR 7219) in her hand and asked Plaintiff what had happened and what type of injuries, if any, he sustained.

55.) Plaintiff notified Defendant R. Ferrari that he was having trouble breathing. That his skin and lungs were burning severely and requested medical care, and decontamination for his medical problems.

56.) Defendant R. Ferrari asked if Plaintiff had a statement he wanted documented? Plaintiff stated, "I was sprayed twice in the face with mace by C.O. Tanori just for an argument."

57.) Plaintiff asked Defendant R. Ferrari a 2nd time to have him decontaminated, complaining about severe skin burning and breathing problems, and she responded, "No, I've been listening to your mouth for the last 2-hours." Defendant R. Ferrari then walked away from Plaintiff's holding cell without returning. Plaintiff was denied medical care for his breathing difficulties, vision problems and pain.

58.) According to C.C.R., Title 15, Section 3268(L), "Decontamination from chemical agents", any person exposed to a chemical agent "shall" (Emphasis mine) be afforded an opportunity to decontaminate as soon as practical.

59.) According to C.C.R., Title 15, Section 3000.5(c), the word "shall" is mandatory.

60.) California law states that public employees such as prison staff are liable for injuries when the employee knows that a prisoner is in need of medical care and fails to take reasonable action (See Government Code 845.6).

61.) The C.D.C.R. has a general policy that it will provide medical services based only on necessity and supported by data as effective medical care (See: C.C.R., Title 15, Section 3350 (a)), "Medical necessity" is defined (in part) as services that alleviate severe pain. (See: C.C.R., Title 15, Section 3350(b)(1)).

62.) In Estelle v. Gamble, 429 U.S. at 104-05, the United States Supreme Court held that C.D.C.R. Medical personnel cannot deny or delay necessary medical care that would alleviate serious pain and suffering in a retaliatory manner based on perceived or actual wrongdoing of a prisoner.

63.) On 9-24-17, Plaintiff filed an employee misconduct/staff complaint health care appeal regarding Defendant R. Ferrari's violation which was exhausted at 3rd level review on 3-16-18 (See: Log #SVSP-HC-17000194).

64.) On 12-5-17, Plaintiff filed a complaint with the Board of Registered Nursing against Defendant R. Ferrari based on purposeful refusal to provide necessary medical care in a retaliatory manner.

65.) Approximately 45-minutes to one hour "following the 2nd battery" with O.C. spray a Lieutenant (Lt.) C. Sharps arrived at R & R and spoke to staff and Plaintiff about what occurred.

66.) After speaking with Defendants C. Tanori; E.W. Beam; and J. Ramirez, Lt. C. Sharps approached Plaintiff asking what occurred. Plaintiff explained that following: A.) He was attacked twice with O.C. spray by C.O. Tanori while locked in the holding cell. B.) That Sgt. Beam, C.O. Ramirez and R.N. Ferrari refused to intervene and protect him. C.) That approx. 10 to 15 minutes passed between the 2 attacks. D.) That Sgt. Beam and C.O. Ramirez instigated the attacks with laughter, a threat and verbal disrespect. E.) That R.N. Ferrari denied his requests for medical care.

67.) Lt. C. Sharps then ordered two unidentified officers he arrived with to "take him down and get him out of here." (Note: Plaintiff was "handcuffed behind his back" and escorted to a very large holding cell in R & R. The two unidentified officers refused to act on the Lt.'s order to "take him down" by looking at each other and nodding their heads negatively, however, escorted Plaintiff out of R & R.

68.) Plaintiff was escorted and housed that evening in D-Facility (cell #216) and left alone without medical care suffering throughout the night with severely burning skin, breathing difficulties and unable to sleep.

69.) In previously mentioned staff complaint/appeals against Defendants C. Tanori and R. Farrari (See: paragraphs #38 and #63), Plaintiff noted he was willing to submit to a polygraph

exam. (According to C.C.R., Title 15, Section 3293(a)) to prove his truthfulness in these matters.

70.) On 10-1-17, Plaintiff filed a "Citizen's Complaint" with the Monterey County Civil Grand Jury (regarding Defendants misconduct raised in this complaint) which has not been responded to.

71.) On 10-26-17. Carol M. Xavier filed a Citizen's Complaint with the Warden of S.V.S.P. regarding issues raised in this complaint which caused her personal financial loss and emotional distress (See: Log # S.V.S.P. FAILED TO ISSUE).

72.) On 2-25-18, Plaintiff filed a claim with the "Office of Risk and Insurance Management, Government Claims Program" regarding Defendants misconduct raised in this complaint (See: Log # 18001545). Within said Government Claim (circumstances section) Plaintiff explained his willingness to submit to a polygraph exam. according to C.C.R., Title 15 Section 3293(a).

73.) Defendants R. Ferrari; E.W. Beam; C. Tanori and J. Ramirez knew or should have known that Plaintiff was suffering from severely burning skin and respiratory difficulties necessitating immediate medical attention after observing him in the holding cell at R & R on 8-30-17.

74.) Rather than provide Plaintiff with necessary medical care, Defendants purposely left him in the R & R holding cell covered in O.C. spray to suffer unnecessarily. These actions were done maliciously and sadistically, for the purpose of causing pain and suffering.

-FIRST CAUSE OF ACTION-

UNNECESSARY FORCE/CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE 8TH AMENDMENT (IN REGARDS TO DEFENDANT C. TANORI WHO ACTED UNDER COLOR OF STATE LAW).

75.) Plaintiff hereby incorporates by reference paragraphs "1 thru 74" as though fully set forth herein.

76.) Because Plaintiff was a prisoner in the care of Defendant C. Tanori, Defendant had a duty under Federal Civil Rights Law not to inflict unnecessary force on Plaintiff and cause him injury.

77.) Plaintiff is informed and believes and thereon alleges that Defendant C. Tanori knew it was a violation of Federal Law to spray Plaintiff with O.C. spray without any penological justification while he was locked and secured in a holding cell.

78.) Specifically, but not by way of limitation, Defendant C. Tanori had a duty to, among other things:

a.) Refrain from using force (i.e., a weapon) on Plaintiff when none was required or appropriate.

b.) Justification or need for force to be utilized.

c.) Summon medical care after causing injury to Plaintiff.

d.) To be courteous and professional in dealing with prisoners.

e.) To be aware and knowledgeable of C.D.C.R.'s policy regarding use of force.

f.) Defend Plaintiff from imminent threat of bodily injury.

g.) Verbally warn Plaintiff prior to the use of force.

h.) Be granted authorization for the "controlled use of force" (i.e., Inmate located in a controlled or isolated area) and

summon the presence of a Captain or Associate Warden.

i.) To afford Plaintiff the opportunity to decontaminate from use of chemical agent as soon as practical.

j.) Adhere to video recording requirement in the "controlled use of force" situations.

k.) Notify his supervisor following the initial use of force.

79.) Defendant C. Tanori violated Plaintiff's right to be free from cruel and unusual punishment guaranteed by the 8th Amendment of the U.S. Constitution by his actions involving battery, abuse, intimidation, harassment and other violations of law against Plaintiff.

80.) Defendant C. Tanori's wrongful actions alleged herein are in violation of rights, benefits and privileges secured by the U.S. Constitution.

81.) Defendant C. Tanori acted under color of state law.

82.) Defendant C. Tanori knew or should have known that his conduct, actions, and attitude created an unreasonable risk of serious harm to Plaintiff.

83.) The actions and conduct of C. Tanori demonstrated a deliberate indifference to Plaintiff's 8th Amendment rights.

84.) As a proximate result of the Defendant's violation of Plaintiff's right to be free from cruel and unusual punishment while housed at S.V.S.P., Plaintiff has suffered, is suffering, and will continue to suffer irreparable harm.

85.) As a direct and foreseeable result of the Defendants violations of the 8th Amendment, Plaintiff has suffered mental/ emotional injuries in the form of fear and anxiety in the

presence of CDCR Custody Staff when locked in cells/holding cages and unable to defend himself. Plaintiff has sought and received anti-anxiety medication due to his ongoing fear and anxiety caused by Defendants.

86.) As a direct and foreseeable result of the Defendants' violations of the 8th Amendment, Plaintiff has suffered, is suffering, and will continue to suffer injuries in the form of pain an suffering, shame, humiliation, degradation, emotional distress, embarrassment, mental distress and other injuries.

87.) An actual controversy exists between Plaintiff and Defendants concerning their rights, privileges and obligations.

88.) Defendant C. Tanori's acts were willful, intentional, malicious, wanton, and despicable in conscious disregard of Plaintiff's rights, entitling Plaintiff to an award of exemplary damages.

-SECOND CAUSE OF ACTION-

BATTERY BY A PEACE OFFICER IN VIOLATION OF STATE TORT LAW (IN REGARDS TO DEFENDANT C. TANORI WHO ACTED UNDER COLOR OF STATE LAW)

89.) Plaintiff hereby incorporates by reference paragraphs "1 thru 88" as though fully set forth herein.

90.) Because Plaintiff was a prisoner in the care of Defendant C. Tanori, Defendant had a duty under State Regulations to protect him from assault, battery, harm or injury.

91.) Plaintiff is informed and believes and thereon alleges that Defendant C. Tanori knew it was a violation of State Law to spray Plaintiff with O.C. spray without penological justification while he was locked in a secured holding cell.

92.) Specifically, but not by was of limitation, Defendant C. Tanori had a duty to, among other things: See paragraph #79 (a) thru (k).

93.) On 8-30-17, in R & R at S.V.S.P., Defendant C. Tanori intentionally discharged his work issued O.C. spray cannister onto Plaintiff on two separate occasions (approximately 10 to 15 minutes apart) while he was locked in a secure holding cell.

94.) According to C.C.R., Title 15 policy regarding "Use of Force" (See Section 3268(a)(6); 3268(b); 3268(i); 3268.1(d)), it is without question that C. Tanori used unreasonable force against Plaintiff and violated C.D.C.R. policy while doing so.

95.) Plaintiff did not consent to the use of force before, during or after the incident and has pursued numerous avenues and agencies attempting to remedy this incident in the hope that it will not occur again at some later date.

96.) Plaintiff has suffered irreparable harm; mental & emotional injuries; pain and suffering due to the unnecessary force utilized by Defendant C. Tanori.

97.) Plaintiff currently suffers and will continue to suffer mental and emotional injuries in the form of shame, humiliation, degradation, embarrassment, mental and emotional distress due to the unnecessary force utilized by Defendant C. Tanori.

98.) Defendant C. Tanori's use of unnecessary force with O.C. spray canister caused this incident (i.e., 2-Battery's) and caused Plaintiff to be subjected to physical pain and suffering, also mental/emotional injuries.

-THIRD CAUSE OF ACTION-

FAILURE TO PROTECT VIOLATION OF THE 8TH AMENDMENT (IN REGARDS TO DEFENDANTS E.W. BEAM AND J. RAMIREZ WHO ACTED UNDER COLOR OF STATE LAW)

99.) Plaintiff hereby incorporates by reference paragraphs "1 thru 98" as though fully set forth herein.

100.) Defendants, Sergeant E.W. Beam and Correctional Officer J. Ramirez were employed as C.D.C.R. Correctional staff and working under color of State Law at all times relevant herein.

101.) Defendants E.W. Beam and J. Ramirez had a duty to protect Plaintiff from being battered and subjected to unnecessary force by Defendant C. Tanori.

102.) Defendants E.W. Beam and J. Ramirez were present at S.V.S.P. in R & R and observed Defendant C. Tanori apply unnecessary force in the form of a chemical agent (O.C. spray) onto Plaintiff without any penological justification for the application of force.

103.) Despite Defendants, E.W. Beam and J. Ramirez, 1st hand knowledge of Defendant C. Tanori's attack of Plaintiff with a chemical agent (O.C. spray) on 2-separate occasions (with approx. 10 to 15 minutes between attacks), neither took any action to intervene and prevent Plaintiff from suffering further harm or injury.

104.) Due to Defendant E.W. Beam and J. Ramirez' deliberate indifference to Plaintiff's health and safety, Defendant C. Tanori was allowed to batter Plaintiff with unnecessary force a second time.

105.) As a direct result of Defendant E.W. Beam and J. Ramirez above-stated deliberate indifference, Plaintiff sustained severe pain and injury along with mental and emotional distress as a result of being sprayed (repeatedly) with a chemical agent a 2nd time by Defendant C. Tanori.

106.) Plaintiff sustained severe breathing difficulties, vision impairment, severe pain in the form of intense burning of skin across a majority of his body causing Plaintiff to feel as if he were "on fire". Due to Defendant's refusal to allow Plaintiff to decontaminate or to receive medical attention of any kind, these symptoms continued well into the following day.

107.) As a direct result of Defendants actions as alleged above, Plaintiff suffered physical, mental and emotional pain and is thus entitled to damages in an amount to be proven at trial.

## -FOURTH CAUSE OF ACTION-

STATE TORT LAW-GENERAL NEGLIGENCE (IN REGARDS TO DEFENDANTS E.W. BEAM AND J. RAMIREZ WHO ACTED UNDER COLOR OF STATE LAW)

108.) Plaintiff hereby incorporates by reference paragraphs "1 thru 107" as though fully set forth herein.

109.) Defendants E.W. Beam and J. Ramirez owed Plaintiff a duty of care as they were employed as Correctional Staff at S.V.S.P. and Plaintiff was under the care and custody of C.D.C.R.

110.) Defendants E.W. Beam and J. Ramirez breached this duty to Plaintiff by failing to intervene and attempt to stop Defendant C. Tanori from battering Plaintiff with chemical agent.

111.) Plaintiff suffered severe pain and injuries as a result of being battered with a chemical agent including severe

breathing difficulties, vision impairment, sever pain in the form of intense burning of skin across most of his body and also mental and emotional distress.

112.) Plaintiff continues suffering mentally and emotionally anxiety around custody staff and has currently been prescribed anti-anxiety medication to help alleviate these symptoms.

113.) Defendants E.W. Beam and J. Ramirez were the direct cause of Plaintiff being battered a 2nd time by Defendant C. Tanori due to their failure to intervene and stop the ongoing attack on Plaintiff.

114.) If Defendants E.W. Beam or J. Ramirez had simply followed protocol (after witnessing the 1st unnecessary use of force/ battery) and activated their personal alarm, the 2nd unnecessary use of force/battery (which occurred 10 to 15 minutes later) would never have occurred as numerous staff members would have been force to respond to R & R.

## -FIFTH CAUSE OF ACTION-

DENIAL AND DELAY OF MEDICAL CARE IN VIOLATION OF THE 8TH AMENDMENT (IN REGARDS TO DEFENDANT R. FERRARI AND ALL OTHER DEFENDANTS WHO ACTED UNDER COLOR OF STATE LAW)

115.) Plaintiff hereby incorporates by reference paragraphs "1 thru 114" as though fully set forth herein.

116.) On 8-30-17, Plaintiff was in R & R at S.V.S.P., was suffering (and needed medical care) in the form of breathing difficulties, vision impairment and severe pain from burning sensations on the skin across most of his body.

117.) Defendant Registered Nurse R. Ferrari (and other named Defendants) observed Plaintiff experiencing the above-stated

serious medical problems presenting in the form of gasping for air, coughing, choking, wheezing, eyes swollen and watering, profusely running nose along with Plaintiff's discolored red, swollen skin. Also, the holding cell had fresh O.C. spray on the floor and walls.

118.) Despite Defendant R. Ferrari (and other Defendants) observing the above-stated symptoms regarding serious medical problems Plaintiff was experiencing, she refused to act and provide Plaintiff with absolutely no medical care in any form.

119.) As a direct result of Defendant R. Ferrari's (and other named Defendants) deliberate indifference to Plaintiff's serious medical needs, he continued to suffer unnecessarily. Plaintiff's breathing difficulties persisted that evening and he was dismissed in serious burning pain on skin which persisted well into the following day when the contents of the can of chemical agents dissipated.

120.) Plaintiff continues to suffer mentally and emotionally from fear and anxiety around custody staff which is exacerbated by his knowledge that certain medical personnel will refuse to provide treatment if and when he is injured by custody staff.

121.) Plaintiff requested and has been prescribed anti-anxiety medication to assist in alleviating fear and anxiety he has experienced following this incident.

122.) Upon information and belief, Defendant R. Ferrari (and other named Defendants) treated Plaintiff with cruel and unusual punishment. Specifically, Defendant R. Ferrari knew that she had a duty to the 8th Amendment of the U.S. Constitution and

State Laws of California as a trained registered nurse respectively, to provide for the medical care, comfort and safety of Plaintiff, and knew that the life, health and safety of Plaintiff would be at risk if she failed to carry out such duties. Moreover, Defendant R. Ferrari specifically knew that her failure to comply with her duties such as providing medical care for Plaintiff would result in further unnecessary pain and suffering and could result in a serious personal injury.

123.) In particular, and without limiting the generality of the foregoing, Defendant R. Ferrari willfully and recklessly, and with deliberate indifference and conscious disregard for the health, safety and well-being of Plaintiff, breached duties she owed to Plaintiff, by among other things failing to:

a.) Monitor and record Plaintiff's actual condition and report meaningful changes.

b.) Note and properly react to conditions.

c.) Establish and implement a patient care plan for Plaintiff

d.) Maintain accurate records of Plaintiff's condition.

e.) Accord to Plaintiff an individual's dignity and respect, and not subject him to verbal, physical abuse or retaliatory behavior.

f.) Properly administer medical care.

g.) Implement a protocol designed to minimize/control pain.

h.) Ensure Plaintiff was not subjected to acts of indifference

i.) Protect Plaintiff from further health and safety hazards;

j.) Care for Plaintiff in a non-deliberate indifferent manner.

124.) As a direct and proximate result of the cruel and unusual punishment by Defendant R. Ferrari (and other named

Defendants) Plaintiff continued suffering pain unnecessarily as Defendant Ferrari refused to provide medical care in any form.

125.) The deliberate acts of Defendant Ferrari as stated above, were both cruel and unusual and done willfully and intentionally in conscious disregard for the rights and safety of Plaintiff in light of her failure to recognize and/or act on Plaintiff's subjection to these acts of cruel and unusual punishment.

126.) As a further direct and proximate result of Defendant R. Ferrari's deliberate as as alleged above, Plaintiff suffered physical, mental and emotional pain and is thus entitled to damages in an amount to be proven at the time of trial.

-SIXTH CAUSE OF ACTION-

STATE TORT LAW-MEDICAL NEGLIGENCE (IN REGARDS TO DEFENDANT R. FERRARI WHO ACTED UNDER COLOR OF STATE LAW)

127.) Plaintiff hereby incorporates by reference paragraphs "1 thru 126" as though fully set forth herein.

128.) Defendant R. Ferrari owed Plaintiff a duty to ecercise the degree of care & skill ordinarily exercised in like cases by reputable members of the health care profession similarly providing medical care in the same locality under similar circumstances in respect to the care of their patients, such as Plaintiff.

129.) Defendant R. Ferrari breached the duty of care she owed Plaintiff by purposely refusing to provide medical care for his injuries.

130.) Defendant R. Ferrari is negligent in this case due to the fact that she failed to use the level of skill, knowledge and care in treating Plaintiff that other reasonably careful

registered nurses would use in similar circumstances. This level of skill, knowledge and care is sometimes referred to as the "Standard of Care."

131.) Due to Defendant R. Ferrari's negligence, Plaintiff suffered injuries (both physically and mentally) in the form of severely burning skin, serious respiratory difficulties, visual impairment and severe anxiety/fear.

132.) Due to Defendant R. Ferrari's negligence, Plaintiff continues suffering mentally and emotionally and is currently attempting to control or alleviate these issues with anti-anxiety medication.

133.) Defendant R. Ferrari's negligence is a direct cause of Plaintiff's injuries due to her purposeful refusal to treat him with any form of medical care. She failed to use the level of skill, knowledge and care in treating Plaintiff that other reasonably careful registered nurses would use in the same or similar circumstances.

134.) Defendant R. Ferrari's negligence caused Plaintiff to be denied medical treatment for his serious injuries. Defendant R. Ferrari's negligence amounts to a conscious disregard of Plaintiff's health, safety, care, and comfort.

-PRAYER FOR RELIEF-

Wherefore, Plaintiff respectfully prays for judgment against Defendants, and each of them, as follows:

a.) Issue a Declaratory Judgment that the Defendants actions complained of herein violated Plaintiff's rights under the United States Constitution and as otherwise alleged herein (i.e.

California State tort law claims).

b.) Award Plaintiff general and specific damages according to proof at trial;

c.) Award Plaintiff for treble damages;

d.) Award Plaintiff for compensatory and punitive damages according to proof at trial;

e.) Award Plaintiff for cost of suit incurred; and

f.) Grant Plaintiff such other and further relief as the Court deems just and proper.

-DEMAND FOR JURY TRIAL-

Plaintiff Gary R. Xavier demands a trial on all claims for which a jury is permitted.

Dated: AUGUST 15th, 2019

Respectfully submitted,

Gary R. Xavier
Plaintiff-Pro Se