United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY RAYMOND XAVIER,<br><br>    Plaintiff,<br><br>    v.<br><br>C. TANORI, E.W. BEAM. J. RAMIREZ, and R. FERRARI.,<br><br>    Defendants. | Case No. 19-cv-05587-JSW<br><br>**ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT AND REFERRING CASE TO PRISONER MEDIATION PROJECT**<br><br>Re: Dkt. No. 32 |

Plaintiff Gary R. Xavier ("Plaintiff") is a California state prisoner formerly housed at the Salinas Valley State Prison where the incident giving rise to his claims took place. Plaintiff, originally proceeding pro se, filed a complaint alleging civil rights violations under 42 U.S.C. Section 1983 against four officials for an incident on August 30, 2017 ("the Incident") during which Plaintiff was sprayed with Oleoresin Capsium ("OC") pepper spray. Plaintiff alleges claims for relief under Section 1983 against Defendants Correctional Officer C. Tanori, Correctional Sergeant E.W. Beam, and Correctional Officer J. Ramirez for violating his Eighth Amendment rights by using excessive force and failing to intervene in that use of force. He also alleges violations of his Eighth Amendment rights against Registered Nurse R. Ferrari for failing

to provide him with medical care necessary to address a serious medical need. (*See generally* Dkt. No. 1, Complaint; Dkt. No. 9, Order of Service dated November 12, 2019.)

On August 30, 2107, Plaintiff was transferred to the Salinas Valley State Prison and, upon arrival, was kept in a holding cell to await the issuance of his property and assignment to his designated housing cell. (Complaint at ¶¶ 9, 13.) During an altercation in the holding cell, Defendant Tanori used OC pepper spray twice on Plaintiff. (*Id.* at ¶¶ 19, 20, 23-31.) Plaintiff does not allege that Defendants Ramirez or Beam used OC pepper spray or any other force, but rather alleges that these Defendants failed to intervene or assist him when excessive force was used against him by Defendant Tanori. (*Id.* at ¶¶ 17, 18, 26-28, 32, 33, 35, 36.) Plaintiff further alleges that Defendant Ferrari failed to provide him with medical care necessary to treat the effects of the pepper spray. (*Id.* at ¶¶ 52-57.)

Defendants Ramirez, Beam, and Ferrari ("Moving Defendants") filed a motion for partial summary judgment on the grounds that (1) Plaintiff failed to exhaust his administrative remedies before filing suit; (2) Defendants Ramirez and Beam did not use excessive force; (3) Defendant Ferrari was not deliberately indifferent to Plaintiff's serious medical needs.[1] For the reasons explained below, Moving Defendants' motion is GRANTED and the remainder of the case is STAYED pending mediation before Magistrate Judge Illman.

**DISCUSSION**

**A.    Standard of Review.**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.

---

[1] The Court finds that Plaintiff's claims against the Moving Defendants in their official capacities is barred by the Eleventh Amendment. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 (1984).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id*.

Exhaustion must ordinarily be decided in a summary judgment motion. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id*.

**B.     Exhaustion of Administrative Remedies.**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Compliance with the exhaustion requirement is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 739-40 & n.5 (2001).

The California Department of Corrections and Rehabilitation provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. *See id*.

Under those regulations, in order to initiate the grievance process, an inmate must first submit an Inmate/Parolee Appeal Form within 30 calendar days of the precipitating event or decision being appealed. Cal. Code Regs. tit. 15, § 3084.2(a)-(c). The grievance must accurately describe both the issue grieved as well as the requested action sought. *Id.* at § 3084.2(a). The

3

inmate must include "all facts known and available to him regarding the issue being appealed." *Id.* at § 3084(a)(4).

Prior to filing his complaint in this matter, Plaintiff filed a number of administrative grievances concerning the Incident.[2] However, Plaintiff has not satisfied the PLRA's exhaustion requirement with regard to his claims against Defendants Correctional Officers Ramirez or Beam. Plaintiff's earlier grievances relate to the conduct of Defendant Tanori, not to the defendants currently seeking partial summary judgment. The only relevant two grievances filed by Plaintiff that relate to the conduct of Defendants Ramirez and Beam were not administratively exhausted.

### 1. Grievances Against Defendant Ramirez.

Plaintiff submitted an initial grievance against Defendant Ramirez (SVSP-18-01575) in which he alleged that Ramirez committed a felony by submitting a false statement in connection with an incident report concerning the Incident. (Dkt. No. 19, Declaration of Moseley at ¶ 9(d), Ex. 7.) In this grievance, Plaintiff requested an investigation of Ramirez's alleged false statements, as well as a request that Ramirez submit to a polygraph test, and that he be referred to the Monterey County District Attorney's Office for prosecution due to a false incident report. (*Id.*) The grievance did not mention the current allegations regarding failure to intervene or alleged failure to protect Plaintiff from harm. There is no mention of deliberate indifference or any of the current claims made in this suit. Rather, the SVSP-18-01575 grievance refers solely to Defendant Ramirez's alleged conduct in submitting a false incident report. (*Id.*) In addition, although Plaintiff submitted the SVSP-18-01575 grievance for the third and final level of review on May 8, 2018, the Office of Appeals canceled the grievance for being late.[3]

The second grievance that also relates to Defendant Ramirez is a follow-up to the SVSP-18-01575 grievance requesting that the cancellation be overturned (OOA-18-06281). The OOA-

---

[2] The record in this matter is extensive. Plaintiff has submitted 57 non-medical grievances (26 of which were screened out and include duplicate resubmissions). Plaintiff has submitted 54 medical grievances to the final third level of appeal since 2008 originating from conduct at the Salinas Valley State Prison. The Court only addresses those grievances relevant to the current motion for partial summary judgment filed by Defendants Ramirez, Beam, and Ferrari.

[3] A cancelled or rejected grievance does not exhaust administrative remedies and is an independent basis for a finding that Plaintiff failed to exhaust his claims against Defendant Ramirez. *See* Cal. Code Regs. tit. 15, § 3084.1(b).

4

1    18-06281 grievance added no additional facts or claims concerning the allegations of Eighth

2    Amendment violations by Defendant Ramirez by use of excessive force or for deliberate

3    indifference.  (*Id.* at ¶ 9(d)(i), Ex. 8.)

### 2. Grievances Against Defendant Beam.

Plaintiff also submitted an initial grievance against Defendant Beam (SVSP-18-01315) in which he alleged that Beam committed a felony by submitting a false statement in connection with an incident report concerning the Incident. (*Id.* at ¶ 9(c), Ex. 5.) In this grievance, Plaintiff requested an investigation of Beam's alleged false statements, a request that Beam submit to a polygraph test, and that he be referred to the Monterey County District Attorney's Office for prosecution due to his false incident report. (*Id.*) Again, in this grievance, Plaintiff did not mention the current allegations regarding failure to intervene or alleged failure to protect Plaintiff from harm. There is no mention of deliberate indifference or any of the current claims made in this suit. Rather, the SVSP-18-01315 grievance refers solely to Defendant Beam's alleged conduct in submitting a false incident report. (*Id.*)

The second grievance relating to claims against Defendant Beam is a follow-up to the SVSP-18-01315 grievance requesting that the cancellation be overturned (OOA-18-06274). (*Id.* at ¶ 9(c)(i).) The OOA-18-06274 grievance raises no additional facts or claims concerning the allegations of Eighth Amendment violations by Defendant Beam by use of excessive force or for deliberate indifference. (*Id.* at ¶ 9(c)(i), Ex. 6.) This grievance was granted and the underlying appeal was screened for review, but the original SVSP-18-01315 grievance does not mention the allegations made in this case. (*Id.* at ¶ 9(c), Ex. 5.)

### 3. Exhaustion Analysis.

The PLRA exhaustion requirement requires "proper" exhaustion. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91 (footnote omitted). An inmate grievance must contain sufficient factual specificity to put the prison and prison officials on notice of the nature of the wrong for which the prisoner seeks redress. *Griffin v.*

5

*Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009).  A "prisoner must exhaust his administrative remedies for the claims contained within his complaint before that complaint is tendered to the district court."  *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010).

Here, the grievances against Defendants Ramirez and Beam relate only to submission of allegedly false information during investigations and not to use of excessive force during the underlying Incident itself.  The grievances do not inform prison officials as to what conduct Plaintiff alleges either Defendant Ramirez or Beam were responsible for that may have given rise to claims for excessive force or for violation of the Eighth Amendment in failing to intervene or otherwise protect Plaintiff from the use of excessive force.

Plaintiff contends that allegations concerning the use of excessive force by Defendants Ramirez and Beam against him during the Incident could have been discerned from his prior grievances related to the Incident in which they were not named.  Plaintiff contends that the other grievances he filed concerning the Incident would have put Defendants Ramirez and Beam on notice of his contention that they were liable for their own use of excessive force or for failure to intervene during the unconstitutional use of force against him.

However, the Court finds that there is no cognizable exception to the requirement that a prisoner must exhaust his administrative remedies for the claims contained within his complaint before that complaint may be tendered to the district court.  The exception to that requirement in *Reyes v. Smith*, 810 F.3d 654 (9th Cir. 2016), does not apply here.  In *Reyes*, the Ninth Circuit found an exception to the exhaustion requirement where the grievance did not name two defendants because it did identify the "Pain Management Committee," of which those defendants were members.  *Id*. at 658-59.  Referring to the committee allowed prison officials to infer the identities of the assertedly responsible officials who were its members.  *Id*. at 659.  Here, however, Plaintiff made separate grievances against Correctional Officer C. Tanori, who allegedly used the OC pepper spray on him and made separate and independent grievances against Defendants Ramirez and Beam.  The Court finds that the identities of these Defendants could not reasonably be inferred as to those grievances in which they were not named.  Accordingly, the Court finds that Plaintiff did not put these Defendants on notice of a claim that they had violated his rights by

6

use of excessive force in violation of his Eighth Amendment rights.

Consequently, regardless whether Plaintiff's grievances against Defendants Ramirez and Beam went through all available levels of administrative review, Plaintiff did not exhaust the claims raised in this case against those correctional officers. There are no triable issues as to whether Plaintiff satisfied the requirement that he properly exhaust all of his available administrative remedies against Defendants Ramirez and Beam prior to filing this action, or as to whether this obligation should be excused. Accordingly, the Court GRANTS partial summary judgment as to Defendants Ramirez and Beam for use of excessive force in violation of Plaintiff's Eighth Amendment rights.[4]

### C. Deliberate Indifference Claim Against Defendant Nurse Ferrari.

Plaintiff also claims that Defendant Nurse Ferrari violated his Eighth Amendment rights by being deliberate indifferent to his medical needs once he had been pepper-sprayed in the holding cell. (Complaint at ¶¶ 52-57.)

Plaintiff claims that after the Incident, Ferrari failed to provide adequate care for his injuries. Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.*

---

[4] Although Plaintiff concedes that neither Defendant Ramirez or Beam used any force against him and notwithstanding the fact that he failed to name either defendant in his prior grievances regarding the alleged use of excessive force, Plaintiff now, in opposing the pending motion, argues that Defendants Ramirez and Beam are independently liable for application of excessive force (and had notice of such allegations) based on the theory that they were integral participants during the Incident. (*See* Dkt. No. 40, Opp. Br. at 8, citing *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941-42 (9th Cir. 2020).)

Plaintiff has not previously made this argument nor raised this theory of liability in his complaint or prior grievances and he therefore cannot rely on it at this stage. *See, e.g., Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000) (finding that plaintiff could not rely on a theory of liability for the first time during summary judgment proceedings where she did not include the legal theory in the complaint or identify the theory at any time prior to summary judgment).

1    Here, the allegations in the complaint and evidence in the record do not establish that
2    Ferrari was deliberately indifferent to Plaintiff's serious medical needs.  Rather, the undisputed
3    record indicates that Plaintiff had access to a sink with running water in his holding cell.  (*See* Dkt.
4    No. 32-4, Declaration of R. Ferrari ("Ferrari Decl.") at ¶¶ 7-8; Dkt. No. 32-3, Declaration of E.
5    Chang ("Chang Decl."), Ex. A (Xavier Deposition) at 71:8-73:1.)  The evidence also establishes
6    that Plaintiff used the cup Defendant Ferrari provided to him and washed off the OC contaminant
7    with the water from the sink in his holding cell.  (Ferrari Decl. ¶¶ 8, 10; Chang Decl., Ex. A at
8    71:2-72:9, 84:1-22, 103:15-23.)  The undisputed evidence also establishes that the exhaust in the
9    facility was turned on after Plaintiff was pepper sprayed.  (Chang Decl., Ex. A at 84:1-22.)  Lastly,
10   the undisputed evidence confirms that Defendant Ferrari conferred with her supervisor, a senior
11   nurse, who advised her to give Plaintiff verbal instructions on how to use the cup she had provided
12   to rinse off using the running water from the sink in the cell.  (Ferrari Decl. ¶¶ 9, 10; Dkt. No. 32-
13   6, Declaration of A. Halstead at ¶¶ 6-9.)  The Court takes judicial notice of the California
14   Department of Corrections and Rehabilitation's Department Operation Manual ("DOM") which
15   provides that "Decontamination from OC may be accomplished by exposing the individual to
16   fresh moving air, or flushing the affected body area with cool water, e.g., shower, sink water, or
17   wet cloths and providing clean clothing."  (Dkt. No. 32-2, Request for Judicial Notice (Section
18   51020.15.5), Ex. A.)

19   Plaintiff received fresh air and access to cool water in a timely manner, and Ferrari's
20   conduct was in accordance with the DOM and her supervisor's advice.   Accordingly, the Court
21   finds that Defendant Ferrari was not deliberately indifferent to Plaintiff's serious medical needs.
22   There is no evidence to the contrary apart from Plaintiff's lay opinion, which on its own does not
23   create a triable issue as to whether Defendant Ferrari was deliberately indifferent to his medical
24   needs.  *See Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (a "difference of opinion
25   between a prisoner-patient and prison medical authorities regarding treatment does not give rise to
26   a § 1983 claim").  As there are no triable issues as to whether Defendant Ferrari was deliberately
27   indifferent to Plaintiff's serious medical needs, Ferrari is entitled to summary judgment on
28   Plaintiff's medical claims.

**D.     Ferrari is Entitled to Qualified Immunity.**

The Court further finds that Defendant Ferrari is entitled to qualified immunity for her conduct. Qualified immunity "shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). A claim for qualified immunity requires the court to evaluate the defense using a two-step inquiry in *Saucier v. Katz*, 533 U.S. 194 (2001). The first step is to determine whether, given the undisputed facts, the official violated a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Under the second step of *Saucier*, the issue is whether the allegedly violated constitutional rights was "clearly established" in the specific factual context confronting the officers. *See Saucier*, 533 U.S. at 202. "If an official could reasonably have believed her actions were legal in light of clearly established law and the information she possessed at the time, she is protected by qualified immunity." *Franklin v. Fox*, 312 F.3d 423, 437 (9th Cir. 2002). Courts may choose which prong of this analysis to address first. *See Pearson*, 555 U.S. at 236-39. Examining the second prong first may "expedite the resolution of the case" because the second prong may be decided as a matter of law. *Morales v. Fry*, 873 F.3d 817, 822-23 (9th Cir. 2017).

Here, the Court begins and ends its analysis with the second factor. A federal right is "clearly established" when, at the time of the official's conduct, the law was "sufficiently clear that every reasonable official would understand" that what he or she was doing was unlawful. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citations and quotations omitted). For a right to be clearly established, the law must be "settled"—the constitutionality "beyond debate"—with a sufficiently clear foundation in "then-existing precedent." *Id.*; *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). The precedent must be sufficiently clear so that "every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* (citation omitted). The Court must therefore ask whether every reasonable official in Defendant's position would have known that her specific actions were unconstitutional, given the particular facts that they faced and the "precedent on the books" at the time the official acted. *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016) (citation and quotation omitted); *see Mullenix v. Luna*, 577

9

U.S. 7, 13 (2015) (noting that the second-prong inquiry depends "very much on the facts of each case").

Here, based on the approval of Defendant Ferrari's supervising nurse as well as the provision in the DOM allowing for the access to decontamination from running water and fresh moving air, the Court finds that it was clear to any reasonable nurse that Defendant Ferrari's conduct was lawful. As there are no triable issues as to whether Defendant Ferrari entitled to qualified immunity, Ferrari is entitled to summary judgment on Plaintiff's medical claims on this independent basis as well.

## CONCLUSION

The motion for partial summary judgment is GRANTED. Summary judgment is granted for Defendants on all of Plaintiff's claims against the moving defendants in their official capacities. Summary judgment is granted for all claims against Defendants Ramirez and Beam based on Plaintiff's failure to exhaust administrative remedies. Summary judgment is granted for all claims against Defendant Ferrari because she did not act with deliberate indifference to Plaintiff's medical needs, and she is entitled to qualified immunity as she acted as a reasonable nurse would have acted in her position.

This case is REFERRED to Magistrate Judge Illman pursuant to the Pro Se Prisoner Mediation Program. All further proceedings in this case are STAYED until further order, with the exception of any proceedings related to the mediation.

The mediation proceedings shall take place within 120 days of the date this order is entered. Magistrate Judge Illman shall coordinate a time and date for a mediation proceeding with all interested parties or their representatives and, within five days after the conclusion of the mediation proceedings, file a report. All mediation proceedings shall be confidential, and no statement made therein will be admissible in any proceedings in the case, unless the parties otherwise agree. No part of the mediation proceeding shall be reported, or otherwise recorded, without the consent of the parties, except for any memorialization of a settlement.

///

///

The clerk shall send a copy of this order to Magistrate Judge Illman.

**IT IS SO ORDERED.**

Dated:  October 13, 2021

_____
JEFFREY S. WHITE
United States District Judge