1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY RAYMOND XAVIER,<br><br>                    Plaintiff,<br><br>          v.<br><br>C. TANORI, E.W. BEAM. J. RAMIREZ,<br>and R. FERRARI.,<br><br>                    Defendants. | Case No.  19-cv-05587-JSW<br><br>**ORDER GRANTING MOTION FOR**<br>**PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 54 |

Plaintiff Gary R. Xavier ("Plaintiff") is a California state prisoner formerly housed at the Salinas Valley State Prison where the incident giving rise to his claims took place.  Plaintiff, originally proceeding pro se, filed a complaint alleging civil rights violations under 42 U.S.C. Section 1983 against four officials for an incident on August 30, 2017 ("the Incident") during which Plaintiff was sprayed with Oleoresin Capsium ("OC") pepper spray.  Plaintiff had alleged claims for relief under Section 1983 against Defendants Correctional Officer C. Tanori, Correctional Sergeant E.W. Beam, and Correctional Officer J. Ramirez for violating his Eighth Amendment rights by using excessive force and failing to intervene in that use of force, as well a

1    claim for violation of his Eighth Amendment rights against Registered Nurse R. Ferrari for failing

2    to provide him with medical care necessary to address a serious medical need.  (*See generally* Dkt.

3    No. 1, Complaint; Dkt. No. 9, Order of Service dated November 12, 2019.)

4         On August 30, 2107, Plaintiff was transferred to the Salinas Valley State Prison and, upon

5    arrival, was kept in a holding cell to await the issuance of his property and assignment to his

6    designated housing cell.  (Complaint at ¶¶ 9, 13.)  During an altercation in the holding cell,

7    Defendant Tanori used OC pepper spray twice on Plaintiff.  (*Id.* at ¶¶ 19, 20, 23-31.)  Plaintiff

8    alleges that Defendants Ramirez and Beam failed to intervene or assist him when excessive force

9    was used against him by Defendant Tanori.  (*Id.* at ¶¶ 17, 18, 26-28, 32, 33, 35, 36.)  Plaintiff

10   further alleges that Defendant Ferrari failed to provide him with medical care necessary to treat the

11   effects of the pepper spray.  (*Id.* at ¶¶ 52-57.)

12        Defendants Ramirez, Beam, and Ferrari filed a motion for partial summary judgment on

13   the grounds that (1) Plaintiff failed to exhaust his administrative remedies before filing suit; (2)

14   Defendants Ramirez and Beam did not use excessive force; (3) Defendant Ferrari was not

15   deliberately indifferent to Plaintiff's serious medical needs.  On October 13, 2021, the Court

16   granted the motion, leaving only the claims against Officer Tanori.  Officer Tanori now moves for

17   partial summary judgment of the claims pending against him on the basis that he was justified in

18   his use of force and also that he is entitled to qualified immunity.

19        The Court shall address other relevant facts as necessary in the remainder of its order.

20                                  **ANALYSIS**

21   **A.    Standard of Review.**

22        Summary judgment is proper where the pleadings, discovery and affidavits show that there

23   is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

24   matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of

25   the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material

26   fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the

27   nonmoving party.

28

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1   The party moving for summary judgment bears the initial burden of identifying those

2   portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

3   issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  When the moving

4   party has met this burden of production, the nonmoving party must go beyond the pleadings and,

5   by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for

6   trial.  If the nonmoving party fails to produce enough evidence to show a genuine issue of material

7   fact, the moving party wins.  *Id.*

8   At summary judgment, the judge must view the evidence in the light most favorable to the

9   nonmoving party: if evidence produced by the moving party conflicts with evidence produced by

10  the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving

11  party with respect to that fact.  *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014).

12  **B.    Use of Force.**

13  Plaintiff claims that Officer Tanori subjected him to excessive force in violation of the

14  Eighth Amendment to the United States Constitution when twice spraying OC at him during the

15  Incident.

16  A prison official violates the Eighth Amendment when two requirements are met: (1) the

17  deprivation alleged must be, objectively, sufficiently serious, and (2) the prison official possesses

18  a sufficiently culpable state of mind.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  In prison-

19  conditions cases, the necessary state of mind is one of "deliberate indifference."  *Id.*  Neither

20  negligence nor gross negligence will constitute deliberate indifference.  *Id.* at 835-37 & n.4.

21  Deliberate indifference is the same standard as criminal recklessness, *i.e.*, the prison official

22  knows of and disregards an excessive risk to inmate health or safety.  *Id.* at 837.  The official must

23  both be aware of facts from which the inference could be drawn that a substantial risk of serious

24  harm exists, and he must also draw the inference.  *Id.*  An Eighth Amendment claimant need not

25  show, however, that a prison official acted or failed to act believing that harm actually would

26  befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a

27  substantial risk of serious harm.  *Id.* at 842.

28

United States District Court
Northern District of California

1    "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes

2    cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S.

3    312, 319 (1986).  Whenever prison officials stand accused of using excessive force in violation of

4    the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith

5    effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  *Id.* at 320-

6    21.

7    Where a prisoner claims that prison officials used excessive force, he must show that the

8    officials applied force maliciously and sadistically to cause harm.  *See Hudson v. McMillian*, 503

9    U.S. 1, 6-7 (1992); *see also Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (reversing

10   district court's grant of defendants' motion for summary judgment because plaintiff raised triable

11   issue of fact whether spraying two cans of pepper spray at him without significant provocation

12   from him or warning from the officer was necessary to gain his compliance).  The requisite

13   constitutional analysis "relies primarily on whether the force used by the officers caused

14   unnecessary and wanton pain and suffering." *Furnace*, 705 F.3d at 1028.  "The question whether

15   the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on

16   whether force was applied in a good faith effort to maintain or restore discipline or maliciously

17   and sadistically for the very purpose of causing harm." *Hudson*, 593 U.S. at 6 (citations omitted).

18   In addition, the "malicious and sadistic" standard applies where a prisoner challenges not so much

19   conditions of confinement or indifference to his medical needs that do not clash with important

20   governmental responsibilities, but rather levels his complaint at measured practices and sanctions

21   used in exigent circumstances or imposed to maintain control over difficult prisoners.  *See*

22   *LeMaire v. Maass*, 12 F.3d 1444, 1452-54 (9th Cir. 1993) (citing *Whitley*, 475 U.S. at 320-22, and

23   *Hudson*, 503 U.S. at 6-7).  The Ninth Circuit has "identified five factors set forth in *Hudson* to be

24   considered in determining how [this] question should be answered; namely, (1) 'the extent of

25   injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that

26   need and the amount of force used; (4) the threat reasonably perceived by the responsible officials;

27   and (5) any efforts made to temper the severity of a forceful response.'" *Furnace*, 705 F.3d at

28   1028-29 (citing *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003)); *see also Hudson*, 503

U.S. at 7.

In this matter, a substantial portion of the operative facts are disputed.  The Court has determined that it cannot find, as a matter of law, that the undisputed facts establish the extent of Plaintiff's injuries, the need for application of force, the amount of force actually used, the perceived threat, or any efforts made to temper the severity of the response.  Plaintiff testifies that he was severely injured.  Defendants testify that he was not.  Plaintiff testifies that the altercation revolved around an exchange of insults and not because he was spitting or throwing things at the officers.  Defendants offer evidence that Plaintiff was at first recalcitrant and then aggressively spitting and throwing objects at the officers.  Plaintiff claims he was not violent or needed to be restrained while he was in his holding cell and that Officer Tanori used the entirety of the pepper spray remaining in the canister.  Defendants claim that Plaintiff was spitting and throwing things from his cell and that Officer Tanori only used two two-second blasts of pepper spray.  Finally, Plaintiff alleges that he was using foul language only and that no effort was made by Officer Tanori to temper the severity of his response to this verbal provocation.  Defendants claim that the two two-second blasts of pepper spray were necessary to restrain Plaintiff from further attacking the officers outside his cell.

Because nearly every detail about the provocation and the response in the Incident are disputed, the Court finds that it cannot make a determination as a matter of law that the use of force by Officer Tanori was either made in a good-faith effort to maintain or restore discipline, or that it was done maliciously and sadistically to cause harm.  *See Whitley*, 475 U.S. at 320-21.

## C.   Qualified Immunity.

Officer Tanori next moves for summary judgment on the claims pending against him on the basis that he is shielded from suit by virtue of qualified immunity.  Qualified immunity "shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted."  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).  A claim for qualified immunity requires the court to evaluate the defense using a two-step inquiry in *Saucier v. Katz*, 533 U.S. 194 (2001).  The first step is to determine whether, given the undisputed facts, the official violated a constitutional right.  *Pearson*

United States District Court
Northern District of California

*v. Callahan*, 555 U.S. 223, 231 (2009).  Under the second step of *Saucier*, the issue is whether the allegedly violated constitutional rights was "clearly established" in the specific factual context confronting the officers.  *See Saucier*, 533 U.S. at 202.  "If an official could reasonably have believed her actions were legal in light of clearly established law and the information she possessed at the time, she is protected by qualified immunity."  *Franklin v. Fox*, 312 F.3d 423, 437 (9th Cir. 2002).  Courts may choose which prong of this analysis to address first.  *See Pearson*, 555 U.S. at 236-39.

The Court has already found there are sufficient contested facts regarding the constitutionality of Officer Tanori's response during the Incident.  However, under the second step of the analysis, a defendant in a Section 1983 action for violation of a constitutional right is entitled to qualified immunity from damages for civil liability if his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065 (9th Cir. 2006) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  "It is not necessary that there be a prior case with the identical facts showing that a right is clearly established; it is enough that there is preexisting law that provides a defendant 'fair warning' that his conduct was unlawful."  *Jennings v. Hays*, No. CV10-8004-PCT-JAT, 2011 WL 1480038, at *9-10 (D. Ariz. Apr. 19, 2011) (quoting *Kennedy*, 439 F.3d at 1065).  It is the burden of the Plaintiff to show that the contours of the right were clearly established at the time of the alleged misconduct.  *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011).

Here, the Court finds that Officer Tanori is entitled to qualified immunity because he violated no clearly established right.  The "law is unclear regarding the parameters of the permissible use of pepper spray to address inmates who disobey or interfere with officers in the performance of their duties."  *Jennings*, 2011 WL 1480038, at *9.  As early as 1979, the Ninth Circuit held that tear gas in small amounts might be appropriately used to subdue provocative inmates.  *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979).  In 2003, the court determined

United States District Court
Northern District of California

United States District Court
Northern District of California

1    that a policy of using pepper spray on prisoners who refused to follow direction "falls within the

2    wide-ranging zone of deference accorded to prison officials in shaping 'prophylactic or preventive

3    measures intended to reduce the incidence of … breaches of prison discipline.'"  *Stewart v.*

4    *Stewart*, 60 Fed. App'x 20, 22 (9th Cir. 2003) (citing *Whitley*, 475 U.S. at 322).  However, other

5    decisions in the circuit have found a constitutional right to be free from cruel and unusual

6    punishment when prisoners are subject to the use of pepper spray while in custody.  *See, e.g.,*

7    *Vlasich v. Reynoso*, 117 Fed. App'x 568, 569 (9th Cir. 2004) (holding that initial failure to follow

8    orders from prison officials followed by six bursts of pepper spray, when viewed in the light most

9    favorable to the plaintiff, could support a reasonable inference of wanton infliction of pain in

10   violation of the Eighth Amendment) (citing *Whitley*, 475 U.S. at 320-21)).

11       Multiple cases have held that the law is unclear with regard to the parameters of the use of

12   pepper spray on inmates.  *See Jennings*, 2011 WL 1480038, at *9 ("The law is unclear regarding

13   the parameters of the permissible use of pepper spray to address inmates who disobey orders or

14   interfere with officers in the performance of their duties."); *Brown v. Williams*, No. 09-cv-00792,

15   2011 WL 386852, at *5 (E.D. Cal. Apr. 8, 2011) ("There is little Supreme Court and Ninth Circuit

16   published precedent that addresses the use of chemical agents to maintain prison discipline, let

17   alone the use of chemical agents to establish compliance with a lawful order.") (citations omitted);

18   *Howard v. Nunley*, No. 06-cv-00191-NVW, 2010 WL 3785536, at *4 (E.D. Cal. Sept. 24, 2010),

19   *aff'd*, 465 Fed. App'x 669 (9th Cir. 2012) ("Supreme Court and published Ninth Circuit precedent

20   have little to say about the appropriate use of pepper spray or similar agents to enforce prison

21   discipline.").

22       In sum, even if Officer Tanori's conduct violated the Eighth Amendment, it would not

23   have been clearly established to a reasonable officer in the situation he confronted that use of

24   pepper spray was not permitted.  Accordingly, Officer Tanori is entitled to qualified immunity on

25   claims for damages.

26                                    **CONCLUSION**

27       For the reasons explained above, the Court GRANTS Officer Tanori's motion for partial

28   summary judgment.  As the Court has previously dismissed the other Defendants in this action, the

1    Court shall issue a separate judgment and the Clerk is instructed to close the matter.

2

3         **IT IS SO ORDERED.**

4    Dated:  April 27, 2022

5                                                        _____

6                                                        JEFFREY S. WHITE
                                                         United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California